Anthony Lamar DEAN, Petitioner–
Appellant,

v.

Cheryl K. PLILER, Warden; Attorney
General of the State of California,
Respondents–Appellees.

No. 05–15997.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 2006.

Filed Nov. 3, 2006.

Jolie S. Lipsig, Esq., Sacramento, CA,
for Petitioner–Appellant.

Patrick J. Whalen, Esq., AGCA—Office
of the California Attorney General, Sacra-
mento, CA, for Respondents–Appellees.

Before: CANBY, THOMPSON, and
HAWKINS, Circuit Judges.

MEMORANDUM *

Anthony Lamar Dean appeals the dis-
trict court's denial of his 28 U.S.C. § 2254
habeas corpus petition challenging his con-
victions for robbery murder with a special
circumstance and second degree robbery.
Dean contends that he was deprived of due
process through prosecutorial misconduct
in several forms. He also requests that
we expand his Certificate of Appealability
("COA") to include several uncertified
claims. We have jurisdiction under 28
U.S.C. § 2253 and affirm the district
court's denial of Dean's habeas petition.

We review de novo the district court's
decision to grant or deny a 28 U.S.C.
§ 2254 habeas petition. *See Lambert v.
Blodgett,* 393 F.3d 943, 964 (9th Cir.2004),
*cert. denied,* — U.S. ——, 126 S.Ct. 484,
163 L.Ed.2d 368 (2005). Section 2254(d),
as revised by the Antiterrorism and Effec-
tive Death Penalty Act of 1996, requires
federal courts to deny a state prisoner's
habeas petition unless the adjudication (1)
"was contrary to, or involved an unreason-
able application of, clearly established
Federal law, as determined by the Su-
preme Court" or (2) "was based on an
unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding." *Nunes v. Mueller,* 350
F.3d 1045, 1051 (9th Cir.2003) (quoting 28
U.S.C. § 2254(d)) (internal quotation
marks removed).

---

* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts
of this circuit except as provided by Ninth
Circuit Rule 36–3.

Dean contends that the prosecutor at his trial engaged in misconduct during his closing argument by improperly arguing facts outside the record, misleading the jury, making false accusations about defense counsel's conduct, and vouching for witnesses and evidence. After carefully reviewing the prosecutor's statements in light of the evidence at trial, we disagree. The prosecutor properly and in good faith asked the jury to draw reasonable inferences from the evidence. *See Shaw v. Terhune*, 380 F.3d 473, 480 (9th Cir.2004) (quoting *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir.2002)). Dean's arguments to the contrary tend to focus on particular interpretations of the prosecutor's words (often out of context), while ignoring other plausible interpretations. Dean has failed to show that the prosecutor's conduct during his closing argument violated clearly established federal law.

Dean next argues that he was deprived of due process when the prosecutor at his trial and the prosecutor at his co-defendant's subsequent trial offered inconsistent arguments regarding the reliability of the same evidence. A finding of misconduct from inconsistent prosecutorial positions between two trials requires an inconsistency between the underlying theories of guilt. *See Thompson v. Calderon*, 120 F.3d 1045, 1058–59 (9th Cir.1997) (en banc) ("[W]hen there are claims of inconsistent prosecutorial conduct, reversal is not required where the underlying theory 'remains consistent.' " (quoting *Haynes v. Cupp*, 827 F.2d 435, 439 (9th Cir.1987))), *rev'd on other grounds*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).

Dean explicitly and conspicuously refuses to make this critical allegation. For example, he entitles one section of his reply brief: "Mr. Dean's [sic] Does Not Assert that the Prosecutor Used Inconsistent Theories." Having thereby distinguished the cases that specifically discuss prosecu-

torial inconsistency between trials, Dean cites to broad rules that offer little insight into the specific prosecutorial conduct at issue.

For example, Dean states that the prosecutors' inconsistent arguments constituted "manipulation of evidence" under *Darden v. Wainwright*, 477 U.S. 168, 181–82, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In *Darden*, the Supreme Court considered whether a prosecutor's inappropriate comments during closing argument constituted a due process violation. *See id.* at 179–82, 106 S.Ct. 2464. Ultimately holding in favor of the prosecutor, the Supreme Court noted that his "argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id.* at 181–82, 106 S.Ct. 2464.

*Darden* does not offer any guidance on what constitutes evidentiary manipulation, and does not discuss prosecutorial inconsistency—much less inconsistency in a two-trial situation. In short, like the other cases Dean cites, *Darden* does not reveal a clearly established prohibition against prosecutors at two different trials arguing inconsistent inferences regarding the same evidence. We therefore cannot conclude that the prosecutors' actions in this case violated clearly established federal law.

Dean also faults the government for its actions regarding Dean's cousin's eyewitness account of the crime, which inculpates Dean. At Dean's trial, the government argued that the cousin's eyewitness account was credible. At the later trial of Dean's co-defendant, the government argued that the cousin's account was not credible, and introduced evidence suggesting that the cousin was too far away to have accurately perceived the crime. Specifically, an officer testified that he stood in the cousin's alleged position, and was unable to recog-

nize the facial features of another officer standing at the crime scene.

Citing this "experiment," Dean argues that the prosecutor at his trial proffered the cousin's testimony knowing that it was false, and also failed to meet his obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose information prior to trial that was relevant to the defense. These claims are, of course, contingent on the officer having conducted the so-called experiment before Dean's trial. The record, however, is silent on the timing of the officer's actions. Because Dean has not established the required chronology, we need not delve further into the merits of his false-testimony and *Brady* claims. Dean has not demonstrated that the government's actions surrounding his cousin's eyewitness account violated clearly established federal law.

Dean asks us to consider several uncertified issues. "In evaluating a request to broaden a COA, this court must determine whether the petitioner has made a 'substantial showing of the denial of a constitutional right.' " *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (quoting *Nardi v. Stewart*, 354 F.3d 1134, 1138 (9th Cir. 2004)). Dean has not made the required showing, and we consequently decline to consider his uncertified arguments.

**AFFIRMED.**