**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIKHIEL JAKOB LEINWEBER, | No. 09-15593 |
| Petitioner-Appellant, | D.C. No. 1:07-cv-01429-LJO-WMW |
| v. | MEMORANDUM[*] |
| TILTON and ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, Warden, | |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted April 20, 2012
San Francisco, California

Before: NOONAN and MURGUIA, Circuit Judges, and TIMLIN, Senior District Judge.[**]

    Petitioner-appellant Mikheil Leinweber appeals the district court's denial of

his habeas corpus petition filed under 28 U.S.C. § 2254, challenging his jury

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Robert J. Timlin, Senior United States District Judge for the Central District of California, sitting by designation.

conviction in California state court for first-degree murder. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we affirm.

We review de novo a district court's denial of a habeas corpus petition and review for clear error the district court's factual findings. *Ali v. Hickman*, 584 F.3d 1174, 1181 (9th Cir. 2009). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief only if (1) a state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). For AEDPA purposes, we look to the state court's last reasoned decision, which in this case is the California Court of Appeal's opinion affirming Leinweber's conviction on direct appeal.

Leinweber contends that, during his state court trial, the prosecutor committed three types of prejudicial misconduct and that the state court's determination that no misconduct occurred was objectively unreasonable under Section 2254(d)(2).

First, Leinweber contends he was denied his right to due process when the prosecutor misstated the law regarding what constitutes involuntary manslaughter under California law during closing argument.

2

The state concedes that the prosecutor misstated the law when he asserted during closing argument that being a felon in possession of a firearm rendered Leinweber ineligible for involuntary manslaughter. Improprieties in a prosecutor's arguments do not constitute reversible error "unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) (quoting *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977)). The misstatement of the law here did not rise to such a level. As noted by the California Court of Appeal, this was a single, isolated comment in a lengthy closing argument and rebuttal, which included a number of accurate statements concerning the jury's ability to use Leinweber's possession of a firearm while being a felon as circumstantial evidence of his state of mind on that day.

Further, the trial judge instructed the jury correctly on the various theories of murder and manslaughter. The jury also was instructed that any statement by an attorney regarding the law inconsistent with the jury instructions was to be disregarded. Instructions from a judge carry more weight than statements of law from counsel, and jurors are presumed to follow the jury instructions they are given. *Boyde v. California*, 494 U.S. 370, 384-85 (1990); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Based on the foregoing, we hold that the California

3

Court of Appeals' determination that Leinweber's trial was not infected with unfairness because of this misstatement of law was not objectively unreasonable.[1]

Second, Leinweber asserts that the prosecutor repeatedly impugned trial counsel, both during the examination of witnesses and during closing arguments, and that this amounted to prosecutorial misconduct depriving him of his constitutional right to a fair trial. He asserts that the prosecutor suggested that defense counsel had encouraged witnesses during his pretrial interviews with them to commit perjury by changing their anticipated testimony to be favorable to Leinweber.

The California Court of Appeal considered various instances in which the prosecutor made these statements and found that, "[w]hile several of the comments made by the prosecutor here could be labeled misconduct, we do not think that the statements deprived Leinweber of a fair trial nor caused a miscarriage of justice." Leinweber argues that the California Court of Appeal's failure to take into account other instances during closing argument in which the prosecutor claimed that

---

[1]Leinweber also contends his due process rights were violated by the trial court's refusal to give a curative jury instruction concerning the misstatement of law. This contention is outside the scope of the issues certified in the Certificate of Appealability ("COA") in this case. As the scope of review in habeas cases under the AEDPA is limited to the issues specified in the COA, we decline to consider it. *See Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005).

4

Leinweber's trial counsel suborned perjury by getting witnesses to change their stories in advance of trial resulted in an objectively unreasonable determination of the facts, in violation of Section 2254(d)(2). We have reviewed the record and find that the California Court of Appeal did in fact consider most of the instances cited by Leinweber, and those not considered were minor instances in which the prosecutor urged the jury to find the witnesses not credible because they fabricated their stories.

However, we also agree with the California Court of Appeal's holding that some of the prosecutor's statements were improper. In particular, the prosecutor's statements referencing defense counsel's dishonorable character, and the suggestion that defense counsel persuaded witnesses to change their testimony and acted improperly in failing to record and turn over notes from witness interviews, were highly improper and deserve our condemnation and opprobrium.

But "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). To determine if the comments rendered the

5

trial unfair, we consider factors such as whether a comment misstated the evidence, whether the court admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence. *See id.* at 182.

Here, the prosecutor's comments did not pass by unnoticed. The trial judge sustained a number of objections by defense counsel, one of which was to "inferences of improper conduct on the part of [defense counsel]." The court also took judicial notice of the fact that a defendant and his counsel have no obligation to turn over any notes, statements or communications between possible prosecution witnesses and defense counsel. The jury was also instructed that they were not to be prejudiced for or against a witness, based on the fact that he or she had been interviewed by an attorney or an investigator, but rather could consider it only for the credibility of that witness' testimony. This instruction also explicitly stated that the personal integrity of the defense counsel, "an officer of the court," was not in dispute.

Also, the record shows that many of the prosecutor's comments were not misstatements of the evidence, but rather proper argument attacking the witnesses'

6

credibility for changing their stories after speaking to defense counsel. Further, defense counsel had an opportunity to rebut the prosecutor's comments, and he did so rather extensively in his closing argument.

Perhaps most importantly, the weight of the evidence against Leinweber was strong. Witnesses testified that he was agitated and angry before the shooting, that they saw him with a gun before the shooting, and that he made several comments that he was going to kill either the victim or the driver of the car. The medical evidence showed that the victim was shot at very close range.

Taking into account all the *Darden* factors, we hold that the California Court of Appeals' determination that "any arguable prosecutorial misconduct did not prejudice Leinweber's case" was objectively reasonable under Section 2254(d)(2). *See Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (per curiam).

Lastly, Leinweber contends that the prosecutor committed misconduct through the use of prior bad act evidence to show Leinweber's propensity to commit crime and to show criminal disposition generally. He complains of instances in which the state trial court admitted prior bad act evidence over defense counsel's objection, and the prosecutor then referred to the evidence at closing argument. This contention does not address prosecutorial misconduct, but rather goes to the state trial court's admission of that evidence, an issue of state law.

7

Simple errors of state law do not warrant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Under AEDPA, a state court decision is only contrary to clearly established Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth" in Supreme Court decisions or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a result different from [Supreme Court] precedent." *Mejia v. Garcia*, 534 F.3d 1036, 1042 (9th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "Clearly established federal law as determined by the Supreme Court, refers to the holdings, as opposed to the dicta of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th Cir. 2005) (quoting *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004)) (internal citations and quotation marks omitted).

Leinweber points to no Supreme Court precedent establishing that admission of propensity evidence for the purposes it was introduced at trial here is unconstitutional. "Although the [Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, *see Williams*, 529 U.S. at 375, it has not yet made a clear ruling that admission of irrelevant or prejudicial evidence constitutes a due process violation sufficient to

warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

Lacking any Supreme Court authority directly on point, Leineweber relies on general due process principles to argue that the admission of evidence may provide a basis for habeas relief if it rendered the trial fundamentally unfair. *See Holley*, 568 F.3d at 1101; *see also Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). While certain evidentiary rulings and particularly the admission of propensity evidence under certain circumstances in a trial may constitute a violation of due process and result in a fundamentally unfair trial, we conclude that the admissibility of the prior bad acts evidence against Leinweber, in conjunction with all the other evidence presented, did not cause the instant trial to have been fundamentally unfair in violation of his due process rights. The evidence presented was relevant and was only admitted for limited purposes. The trial court instructed the jury that such evidence was to be used only to determine intent, absence of malice, or absence of accident. Therefore, we conclude that the California Court of Appeals did not act in an objectively unreasonable manner in concluding that the propensity evidence was constitutionally admissible.

**AFFIRMED.**

9